COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| CHANCELLOR FRAGOSO, | § | No. 08-22-00182-CR |
| Appellant, | § | Appeal from the |
| v. | § | Criminal District Court No. 1 |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20160D01962) |

## <u>MEMORANDUM OPINION</u>

A jury found Appellant Chancellor Fragoso guilty of two counts of manufacture or delivery of a controlled substance in penalty group one in an amount less than one gram, and one count of manufacture or delivery of a controlled substance in penalty group one in an amount greater than one gram but less than four grams. Appellant challenges his convictions in three issues, arguing: (1) the trial court erred by denying Appellant's motion for directed verdict; (2) the trial court erred when it allowed the jury to consider a lesser-included offense that was unsupported by the evidence presented at trial; and (3) Appellant's right to a speedy trial was violated by the approximately eight-year delay between his indictment and trial. For the following reasons, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual background

Detective Gerd Ramm of the El Paso Police Department (EPPD) was a narcotics section undercover officer in 2014. On January 18, 2014, Ramm received a tip that a person named "Brian" was selling narcotics using a certain phone number. Ramm called the phone number and spoke to an individual he thought was Brian. Ramm agreed to meet Brian at a local fast-food restaurant to buy $50 worth of narcotics from Brian. Ramm went to the restaurant and observed a small sedan pull up near the restaurant. Ramm got inside the sedan, handed the man $50 of EPPD's designated funds for undercover narcotics purchases, and received three folded pieces of paper containing a white powdery substance Ramm suspected to be cocaine. After the exchange, the man asked Ramm who "Brian" was, and he told Ramm to call him "CJ." The man and Ramm went their separate ways. Ramm reported the transaction to his supervisor and submitted the folded pieces of paper with the substances into police custody. At trial, Ramm identified Appellant as the person from whom he purchased narcotics on January 18, 2014.

On January 29, 2014, Ramm contacted Appellant and arranged to purchase more narcotics at a different restaurant. Ramm met with Appellant in Ramm's truck and gave Appellant $40 in EPPD funds. In exchange, Appellant gave Ramm two pieces of folded paper that contained a white powdery substance Ramm believed to be cocaine. After Appellant left Ramm's truck, Ramm drove away, notified his supervisor that the transaction was completed, and submitted the pieces of folded paper with the substances into police custody. Ramm identified Appellant as the person from whom he purchased narcotics on January 29, 2014.

After having trouble contacting Appellant, Ramm reached Appellant on March 13, 2014, and again arranged to purchase narcotics. Appellant asked Ramm to meet him at an intersection

2

near a residential neighborhood. Michael Lane, an undercover EPPD narcotics detective, was working with Ramm and surveilling the transaction from another vehicle. Ramm again gave Appellant $40 in EPPD funds, and Appellant gave Ramm two folded pieces of paper with a white powdery substance Ramm believed to be cocaine. Ramm subsequently entered the folded pieces of paper with the substances into police custody.

Immediately after the purchase was completed, Lane, who was in discreet contact with Ramm via telephone during the buy, observed a person matching the description of the person from whom Ramm bought narcotics go into the gate outside a residence located on Tularosa Avenue. Ramm researched the address on Tularosa Avenue and learned that it was associated with "Chancellor Joziah Fragoso." Ramm wrote a complaint affidavit to acquire an arrest warrant for Appellant. Ramm identified Appellant as the person from whom he purchased narcotics the third time as well.

Kaitlin Williams, a forensic chemist, tested the substances and the results were positive for cocaine. Williams testified to the following weight the cocaine (including adulterants and dilutants but not packaging) from the separate purchases: (1) 1.06 grams from the January 18, 2014 transaction; (2) 0.73 grams from the January 29, 2014 transaction; and (3) 0.67 grams from the March 13, 2014 transaction.

### B. Procedural history

The State of Texas charged Appellant with three counts of manufacture or delivery of a controlled substance in penalty group one in an amount greater than one gram but less than four grams, with Count I alleging a January 29, 2014 offense date; Count II alleging a March 13, 2014 offense date; and Count III alleging a January 18, 2014 offense date.

Following the State's case-in-chief, Appellant moved for a directed verdict on Counts I and II, asking the trial court to instruct the jury to find Appellant not guilty of those counts because the evidence showed that Appellant only sold Ramm 0.73 grams of cocaine and 0.67 grams of cocaine, respectively, on the alleged dates. Appellant also argued that the State should have amended those two counts in the indictment to allege offenses for manufacture or delivery of a controlled substance in penalty group one in an amount less than one gram. The State requested that the trial court issue jury instructions on the lesser-included offense of manufacture or delivery of a controlled substance in penalty group one in an amount less than one gram. Relying on *Grey v. State*,[1] the trial court denied Appellant's directed-verdict motion and added a paragraph to the jury charge that instructed the jury on Counts I and II regarding the lesser-included offense of manufacture or delivery of a controlled substance in penalty group one in an amount less than one gram.

Regarding Counts I and II, the jury found Appellant guilty of the lesser-included offense of manufacture or delivery of a controlled substance in penalty group one in an amount less than one gram. Regarding Count III, the jury found Appellant guilty of the charged offense of manufacture or delivery of a controlled substance in penalty group one in an amount greater than one gram but less than four grams. The trial court assessed punishment of fifteen months' imprisonment for Counts I and II and five years' imprisonment for Count III, with the sentences running concurrently. The trial court imposed these sentences in open court on August 23, 2022.

On September 21, 2022, Appellant filed a motion for new trial pro se. On September 30, 2022, the trial court denied the motion by written order because the "court no longer ha[d] jurisdiction" to decide the motion. On December 16, 2022, Appellant, again acting pro se, filed an

---

[1] 298 S.W.3d 644 (Tex. Crim. App. 2009).

"Amended Motion for New Trial" in which he argued, among other things, that the eight-year period the case had been pending violated his right to a speedy trial. No express ruling on Appellant's amended motion appears in the record. This appeal followed.

## II. ISSUES ON APPEAL

Appellant challenges his convictions in three issues, arguing: (1) the trial court erred by denying his motion for directed verdict on Counts I and II; (2) the trial court erred by instructing the jury regarding the lesser-included offense that was not supported by the evidence; and (3) the approximately eight-year delay between Appellant's indictment for the charged offenses and the trial violated his constitutional right to a speedy trial.

## III. MOTION FOR DIRECTED VERDICT AND VARIANCE

In his first issue, Appellant argues that the trial court erred by denying his motion for directed verdict on Counts I and II (which charged manufacture or delivery of one to four grams of cocaine occurring on January 29, 2014, and March 13, 2014, respectively) because the evidence showed Appellant only sold Ramm less than one gram of cocaine on those dates.

### A. Standard of review and applicable law

We review a trial court's ruling on a motion for directed verdict as a challenge to the legal sufficiency of the evidence. *Elias v. State*, No. 08-15-00057-CR, 2016 WL 6473055, at *2 (Tex. App.—El Paso Nov. 2, 2016, no pet.) (not designated for publication) (citing *Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996)). In a legal-sufficiency challenge, we focus solely on whether the evidence, when viewed in the light most favorable to the verdict, would permit any rational jury to find the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Brooks v. State*, 323 S.W.3d 893, 912

5

(Tex. Crim. App. 2010) (establishing legal sufficiency under *Jackson v. Virginia* as the only standard for review of the evidence).

Here, Appellant challenges the denial of his directed-verdict motion regarding Counts I and II (manufacture or delivery of a controlled substance in penalty group one in an amount greater than one gram but less than four grams). A person commits that offense "if the person knowingly manufactures, delivers, or possesses with intent to deliver a controlled substance listed in Penalty Group 1." TEX. HEALTH & SAFETY CODE ANN. § 481.112(a). "An offense under Subsection (a) is a felony of the second degree if the amount of the controlled substance to which the offense applies is, by aggregate weight, including adulterants or dilutants, one gram or more but less than four grams." *Id.* § 481.112(c). Likewise, an offense under Subsection (a) is a state jail felony if the amount in question is less than one gram. *Id.* § 481.112(b). Cocaine is a Penalty Group 1 substance. *Id.* § 481.102(3)(D).

### B. Analysis

Appellant argues that his directed-verdict motion on Counts I and II should have been granted because the evidence showed he sold Ramm less than one gram of cocaine during each incident alleged in those counts. Appellant points to Williams's testimony and the associated laboratory reports showing Appellant only sold Ramm 0.73 grams of cocaine on January 29, 2014, and 0.67 grams on March 13, 2014, both of which were below the amount necessary to support a conviction for manufacture or delivery of one to four grams of a substance in penalty group one. During the bench conference on Appellant's motion, the parties agreed that the evidence showed Appellant only sold Ramm less than one gram of cocaine during the incidents associated with Counts I and II. Thus, the only question before us is whether the trial court should have granted Appellant's directed-verdict motion.

As the trial court noted, *Grey v. State*, 298 S.W.3d 644, 645 (Tex. Crim. App. 2009) provides guidance on this issue. There, the Court of Criminal Appeals held that when the State requests the submission of a lesser-included offense to the jury, submission of the lesser-included offense does not require some evidence that would permit a jury to find the defendant guilty only of the lesser-included offense. *Id.* at 650–51. In this situation, we have recognized that "[t]he State could pursue the charged offense alone, or the State could also obtain instructions on a lesser-included offense, or the State could abandon the charged offense altogether in favor of prosecuting the lesser-included offense." *Brooks v. State*, No. 08-15-00208-CR, 2017 WL 6350260, at *6 (Tex. App.—El Paso Dec. 13, 2017, pet. ref'd) (not designated for publication).

Here, Appellant does not dispute that the manufacture or delivery of a substance in penalty group one in an amount less than one gram is a lesser-included offense of manufacture or delivery of a substance in penalty group one in an amount greater than one gram but less than four grams. Neither does he dispute that the evidence at trial was legally sufficient to have shown that Appellant sold Ramm 0.73 grams of cocaine on January 29, 2014, and 0.67 grams of cocaine on March 13, 2014. Because *Grey* allows the State to proceed on the lesser-included offense in the absence of proof of the greater offense, and because the State requested an instruction as to the lesser-included offense on Counts I and II, we hold that the trial court did not err by denying the directed-verdict motion on this basis. *See Grey*, 298 S.W.3d at 645, 650–51.

Moreover, the jury did not find Appellant guilty of the charged offense of manufacture or delivery of one to four grams of a substance in penalty group one, but instead found him guilty of the lesser-included offense of manufacture or delivery of less than one gram of a substance in penalty group one. Because Appellant moved for a directed verdict on the greater offense and was found not guilty of that offense, he was not harmed by the trial court's denial of his motion. For

these reasons, we conclude that the trial court did not err by denying Appellant's motion for directed verdict on this additional basis. *See Villareal v. State*, No. 02-19-00405-CR, 2021 WL 1323414, at \*2 (Tex. App.—Fort Worth Apr. 8, 2021, pet. ref'd) (mem. op., not designated for publication) (no showing of harm possible where the trial court denied a motion for directed verdict on a murder charge and the jury found the defendant not guilty of that offense and only found him guilty of the lesser-included offense of aggravated assault causing serious bodily injury).

Accordingly, we overrule Appellant's first issue.

## IV.  VARIANCE BETWEEN INDICTMENT AND EVIDENCE

In his second issue, Appellant argues that because of the variance between the indictment and the evidence at trial, the trial court erred by allowing the jury to consider the lesser-included offense of manufacture or delivery of a controlled substance in penalty group one in an amount less than one gram regarding Counts I and II. In particular, Appellant contends that a material variance existed between the charged offenses of manufacture or delivery of one to four grams of a substance in penalty group one and the proof at trial of Appellant's commission of only the lesser-included offenses of manufacture or delivery of less than one gram of a substance in penalty group one, thus requiring acquittal.

### A.  Standard of review

In cases involving a sufficiency claim based on a variance between the indictment and the evidence, we consider the materiality of the variance rather than review the evidence under the traditional sufficiency standards set forth in *Jackson v. Virginia*. *See Fuller v. State*, 73 S.W.3d 250, 253 (Tex. Crim. App. 2002) (en banc). Generally, a variance between the indictment and the evidence at trial is fatal to a conviction and requires acquittal, but acquittal on this ground does not bar re-prosecution on a new charge alleging the offense the State proved in the first trial. *Bailey v.*

*State*, 87 S.W.3d 122, 126–27 (Tex. Crim. App. 2002); *Stevens v. State*, 891 S.W.2d 649, 650 (Tex. Crim. App. 1995) (en banc). However, a variance between the wording of an indictment and the evidence at trial only requires acquittal if the variance is material and prejudices the defendant's substantial rights. *Gollihar v. State*, 46 S.W.3d 243, 257 (Tex. Crim. App. 2001). To determine if a variance violates the defendant's substantial rights, we determine: (1) whether the indictment informed the defendant of the charge against him sufficiently to allow him to prepare an adequate defense at trial; and (2) whether prosecution under the deficiently drafted indictment would subject the defendant to the risk of being prosecuted later for the same crime. *See id.*

### B. Analysis

Here, the indictment Counts I and II charged Appellant with manufacture or delivery of one to four grams of a substance in penalty group one, and the jury convicted Appellant of the lesser-included offense of delivery of less than one gram of a substance in penalty group one. The dates alleged in the indictment regarding Counts I and II are January 29, 2014, and March 13, 2014, respectively. As such, the indictment provided Appellant notice that he was being prosecuted for the specific acts of selling cocaine on those specific dates. Given the uniqueness of the events associated with the charges, nothing indicates Appellant was unaware of the charges against him or unable to adequately prepare a defense to those charges, notwithstanding the larger amount of cocaine alleged in the indictment. In support of Appellant's proper notice, the record indicates that the State filed the certificate of analysis with the laboratory results from Williams's analyses of the substances Appellant sold (including the weights of the substances tested) approximately three years before trial, giving Appellant ample time to prepare a defense to the charges.

Moreover, under the principles of double jeopardy, there is no risk that Appellant would be subject to prosecution again for the same offenses because he cannot be tried or punished twice

for both the greater offenses and lesser-included offenses here. *See Ex parte Chaddock*, 369 S.W.3d 880, 883 (Tex. Crim. App. 2012) (under the prohibition against double jeopardy, a defendant may not be tried or punished twice for a greater-inclusive and lesser-included offense).

For these reasons, we find that the variance was immaterial and that Appellant cannot show he is entitled to acquittal on this basis. *See Ramos v. State*, 407 S.W.3d 265, 271 (Tex. Crim. App. 2013) (recognizing that a variance between an indictment alleging murder and evidence at trial proving manslaughter was immaterial because (1) the defendant was on notice regarding manslaughter because of the unique facts of the case giving rise to the murder charge, and (2) the manslaughter offense concerned one victim for whose death the defendant could not be prosecuted twice under double jeopardy because manslaughter is a lesser-included offense of murder).

Accordingly, we overrule Appellant's second issue.

## V. SPEEDY-TRIAL CLAIM

In his third issue, Appellant argues that the approximately eight-year delay between his indictment and trial violated his federal constitutional right to a speedy trial under the Sixth Amendment. *See* U.S. CONST. amend. VI. Prior to discussing the merits of Appellant's argument, we must consider the State's contention that he has not preserved the speedy-trial issue for our review. *See Mays v. State*, 285 S.W.3d 884, 889 (Tex. Crim. App. 2009) ("[I]t [is] incumbent upon [an appellate court] . . . to take up error preservation as a threshold issue."). Appellant has not responded to the State's error-preservation argument.

To preserve an issue for appellate review, an appellant generally has the burden to make a timely and specific objection in the trial court and obtain a ruling on the objection. TEX. R. APP. P. 33.1(a); *see Dixon v. State*, 595 S.W.3d 216, 223 (Tex. Crim. App. 2020) (noting that the appealing party has the burden to bring forth a record showing that error was preserved). This

error-preservation requirement applies to many claims implicating the violation of constitutional rights, including speedy-trial claims. *See Henson v. State*, 407 S.W.3d 764, 768 (Tex. Crim. App. 2013). The rationale therefor is that a long delay in the trial can often benefit a defendant, such as through dismissal of the charge during the delay. *Id.* at 769. "The requirement of preservation forces the defendant to pick one strategy. He can either fail to insist upon a speedy trial and possibly reap benefits caused by delay, or he can insist on a prompt trial, and if it is not granted, argue for a dismissal. He may not do both." *Id.* Moreover, at least two of the *Barker v. Wingo* factors utilized in a speedy-trial analysis are "fact-specific inquiries and may not be apparent from the trial record," which require further development of the record through a hearing so that reviewing courts may accurately analyze the claim. *Id.*; *see Barker v. Wingo*, 407 U.S. 514, 530–32 (1972) (setting forth the factors used to analyze a speedy-trial claim).

The record indicates that at no point prior to trial did Appellant file a motion for speedy trial or otherwise take action to indicate that he was seeking a speedy trial.[2] *See Henson*, 407 S.W.3d at 769 (recognizing that "[a] speedy-trial demand should be, at the very least, unambiguous"). On the contrary, the record shows that Appellant himself filed multiple pre-trial motions for continuance. Additionally, there is nothing in the record suggesting that Appellant

---

[2] Appellant first raised the speedy-trial issue in his amended motion for new trial filed on December 16, 2022, more than thirty days past the imposition of sentence on August 23, 2022. The record does not indicate that Appellant received leave of court to file an untimely amended motion for new trial. Because Appellant did not file his amended motion for new trial within thirty days of the imposition of sentence or receive leave of court to file the amended motion, the motion is not timely, and we disregard the arguments within the motion. *See* TEX. R. APP. P. 21.4(a) ("The defendant may file a motion for new trial before, but no later than 30 days after, the date when the trial court imposes or suspends sentence in open court."); *see also Rubio v. State*, 638 S.W.3d 693, 699 (Tex. Crim. App. 2022) (recognizing that TEX. R. APP. P. 21.4 "absolutely and explicitly prohibits a defendant from filing a motion for new trial beyond 30 days after sentencing" and that an amended motion for new trial must be filed with leave of court and within the 30-day period for filing a motion for new trial).

objected to the State's motions for continuance. In fact, one motion expressly stated that Appellant did not oppose the motion.

For these reasons, we conclude that Appellant has not preserved his speedy-trial claim for our review, and it is waived. *See id.* (defendant waived appellate review of his speedy-trial claim where he made "no effort to demand a speedy trial[,]" which was shown through the lack of a speedy-trial motion, the absence of a request of a hearing on the delays, and the defendant's agreement to each reset of the trial date); *Flores v. State*, No. 07-16-00071-CR, 2018 WL 1055872, at *6–7 (Tex. App.—Amarillo Feb. 26, 2018, pet. ref'd) (mem. op., not designated for publication) (defendant failed to preserve his speedy-trial claim despite filing a speedy-trial motion because the defendant did not take additional steps to pursue a speedy-trial claim and there was no evidence of prejudice to his defense due to the lack of both a hearing on the claim and evidence to support the claim).

Accordingly, we overrule Appellant's third issue.

## VI. CERTIFICATION OF RIGHT TO APPEAL

We note that the trial court has certified Appellant's right to appeal in this case, but the certification does not bear Appellant's signature or that of his attorney indicating that he has been informed of his rights to appeal and to file a pro se petition for discretionary review with the Texas Court of Criminal Appeals. *See* TEX. R. APP. P. 25.2(d). We thus find that the certification is defective and that neither Appellant's attorney nor the trial court has corrected the defect.

The Court ORDERS Appellant's attorney, pursuant to Rule 48.4, to send Appellant a copy of this opinion and this Court's judgment, to notify Appellant of his right to file a pro se petition for discretionary review, and to inform Appellant of the applicable deadlines. *See* TEX. R. APP. P.

48.4, 68. The Court further ORDERS Appellant's attorney to comply with all the requirements of Rule 48.4. *See* TEX. R. APP. P. 48.4.

## VII.  CONCLUSION

We affirm the judgments supporting Appellant's convictions.

LISA J. SOTO, Justice

June 30, 2023

Before Rodriguez, C.J., Palafox, and Soto, JJ.

(Do Not Publish)