NO. 07-10-0098-CR

NO. 07-10-0322-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

MAY 12, 2011

_____

JAMES TERRY SHELNUTT, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 320TH DISTRICT COURT OF POTTER COUNTY;

NOS. 59,233-D & 59,234-D; HONORABLE DON EMERSON, JUDGE

_____

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, James Terry Shelnutt, was convicted following a jury trial of the murders of Robert Phillips and Phyllis Fassauer in Cause Nos. 59,233-D and 59,234-D, respectively, and sentenced to confinement for life and fined $10,000 in each case.[1]   In two issues, Appellant asserts:  (1) the trial court erroneously joined the two causes in a

_____

[1]*See* Tex. Penal Code Ann. § 19.02 (b)(1) (West 2003).

single trial and (2) his counsel was ineffective for not presenting mitigation evidence during his punishment trial. We modify the judgment in Cause No. 59,233-D to reflect the correct amount of court costs and, as modified, is affirmed. The judgment in Cause No. 59,234-D is affirmed.

## Background

On February 4, 2009, a Potter County Grand Jury returned separate indictments charging Appellant with two murders allegedly committed more than twenty-seven years prior to the indictments. In Cause No. 59,233-D, Appellant was charged with intentionally or knowingly causing the death of Robert Phillips on November 16, 1981, by shooting him with a firearm. In Cause No. 59,234-D, Appellant was charged with intentionally or knowingly causing the death of Phyllis Fassauer on November 16, 1981, by shooting her with a firearm. The State's theory was that Appellant was guilty under the law of parties because he solicited, aided, assisted, and encouraged William Randall Bennett to kill Phillips, and that Bennett then also killed Fassauer in the course of killing Phillips.

On February 22, 2010, Appellant filed a motion to quash and exception to the substance of the indictment underlying Cause No. 59,234-D, the Fassauer murder. In his motion, Appellant alleged that the State could not prove that Appellant "intentionally or knowingly caus[ed]" the death of Fassauer under the law of transferred intent. On February 24, 2010, the trial court held a pretrial hearing where the motion to quash was addressed. During the hearing, Appellant's counsel asserted that the indictment alleging Appellant murdered Fassauer was invalid because it was not supported by the

2

law existing at the time of the offense and there was no legal or factual basis to support the State's allegations in that cause.[2]

The trial court ultimately denied Appellant's motion to quash; however, during the course of that hearing, the discussion turned to whether or not the two indictments should be tried together. In response to the trial court's query as to whether they were going to be tried together, Appellant's counsel responded: "No." Appellant's counsel contended that evidence of Fassauer's murder would be prejudicial and unduly aggravate any punishment Appellant might receive for Phillips's murder because Fassauer was merely an innocent bystander. The State asserted that the cases should be tried together because Fassauer's death and Phillips's death were inextricably intertwined as a double homicide that occurred during the same criminal episode and evidence of both murders would necessarily be introduced during the prosecution of either indictment. Thereafter, the trial court made a determination that the two indictments would be tried together even though the State had never filed written notice of consolidation or joinder.

A four day jury trial commenced on March 1, 2010. The day trial commenced, Appellant filed a motion entitled "Motion For Continuance" wherein he requested the trial court to reconsider its ruling on Appellant's motion to quash the indictment and further requested a continuance of Cause No. 59,234-D, the Fassauer murder, because

---

[2]Ultimately, Appellant does not contest the applicability of the law of parties as a legal basis for the conviction, nor does he contest the legal and factual sufficiency of the evidence to support that conviction.

the State had not filed a motion for joinder or served notice as contemplated by section 3.02(b) of the Texas Penal Code.[3]

Prior to denying Appellant's motion for continuance, the trial court asked Appellant's counsel to explain the reason for the request and received the following responses:

> Your Honor, as previously that we argued (sic) in a pretrial motion to quash the indictment in 59,234, there are two different and separate indictments. We believe that because there was no motion for joinder filed, or a notice as required of 30 days, there should be no joinder.
>
> *   *   *
>
> Yes, sir, and I'm only requesting a *continuance* in 59,234. I'm sorry if I wasn't clear.

At the trial, the State presented testimonial evidence from a number of witnesses, including Bennett, that Appellant solicited Bennett to kill Phillips in return for an ounce of methamphetamine. Appellant gave Bennett a gun and drove him to a location near Phillips's house where he let Bennett out of his car. After entering Phillips's house, Bennett spoke to Phillips and his girlfriend, Fassauer, in the living room. He then went into the kitchen to get a drink of water. When he returned to the living room, he first shot Phillips from behind in the back of the head and then shot Fassauer because she witnessed Bennett shooting Phillips. He then left the house. Shortly thereafter,

---

[3]Throughout the remainder of this opinion, references to "section ____" or "§ ___" are references to the Texas Penal Code.

Appellant picked Bennett up while he was walking down the street as planned.[4]  Based on this evidence, the jury returned a verdict of guilty on both indictments.

At the punishment trial, the State re-offered the evidence presented in its case-in-chief and introduced a penitentiary package containing information on Appellant's four previous felony convictions.  Appellant's counsel presented no mitigation evidence. During closing argument by Appellant's counsel, however, she argued that Appellant was not present at the time the two persons were killed and Bennett was the shooter. She indicated favorable character witnesses were unavailable because Appellant had built his own prison using and selling drugs in a culture where survival was always an issue.  The jury assessed punishment for each indictment at confinement for life and a $10,000 fine.  The trial court's subsequent judgments sentenced Appellant to two concurrent sentences of confinement for life and a $10,000 fine.[5]  This appeal followed.

### Joinder / Severance

Appellant asserts the trial court erroneously joined the two causes in a single trial because the State did not move to consolidate or give thirty days written notice that it intended to consolidate pursuant to section 3.02(b).  Appellant further asserts that severance was mandated pursuant to section 3.04(a) because Appellant objected to a joint trial.  Appellant asserts he was harmed because the State's evidence underlying

---

[4]Bennett's account of his agreement with Appellant, the murder and subsequent events taken by Appellant to hide his participation in the murders was corroborated by four other witnesses who overheard statements made by Appellant shortly after the murders occurred.

[5]*See* Tex. Penal Code § 3.03(a) (West 2003) (absent an exception, when an accused is found guilty of more than one offense arising out of the same criminal episode prosecuted in a single action, the sentences shall run concurrently).

Fassauer's murder was weak and the trial court did not give its legal analysis when it denied Appellant's motion to quash.

The State contends Appellant waived his right to a severance or acquiesced to a consolidated trial because Appellant never requested that the causes be tried separately either orally or in a written motion. The State also asserts that, if error was committed, it was harmless error because, if separate trials were had, Phillips's and Fassauer's murders would be admissible in either action because the murders occurred in the same criminal episode and, as such, constituted same transaction contextual evidence.

Although we consider it doubtful whether Appellant affirmatively asserted his right to severance prior to trial,[6] we need not consider this issue because assuming severance was raised and erroneously denied by the trial court, any error was harmless. To judge the likelihood that harm occurred, we must consider everything in the record, including all the evidence admitted at trial, the closing arguments, and the juror's comments during voir dire. *Llamas v. State*, 12 S.W.3d 469, 471 (Tex.Crim.App. 2000). In order to properly conduct a harm analysis under Rule 44.2(b), an appellate court need only determine whether or not the error affected a substantial right of the defendant. See Tex. R. App. P. 44.2(b). To make this determination, appellate courts

---

[6]Appellant's motions asked only that the trial court quash the indictment or grant a continuance of Cause No. 59,234-D. No written or oral motion for a separate trial was ever made. *See Coleman v. State*, 788 S.W.2d 369, 373 (Tex.Crim.App. 1990) (where appellant's motion did not apprise the trial court that it was a motion to sever offenses for separate trials, appellant's right to severance was waived). Furthermore, Appellant does not argue or explain why the right to a severance under § 3.04(a) should apply to the facts of this case. *See* § 3.04(c) (providing that § 3.04(a) does not apply to a prosecution of multiple offenses arising out of the same criminal episode).

must decide whether the error had a substantial or injurious affect on the jury verdict. *White v. State*, 190 S.W.3d 226, 231 (Tex.App.--Houston [1st Dist.] 2006, no pet.).

Here, the evidence of Appellant's two offenses was admissible in a single trial as contextual evidence.[7]  *See Camacho v. State*, 864 S.W.2d 524, 532 (Tex.Crim.App. 1993), *cert. denied*, 510 U.S. 1215, 114 S.Ct. 1339, 127 L.Ed.2d 687 (1994) (where two persons were kidnapped in Texas and later murdered in Oklahoma, kidnapping and double murder were part of the same transaction contextual evidence); *Nelson v. State*, 864 S.W.2d 442, 498-99 (Tex.Crim.App. 1993), *cert. denied*, 510 U.S. 1215, 114 S.Ct. 1338, 127 L.Ed.2d 686 (1994) (where two women were simultaneously sexually assaulted and one woman murdered, evidence of one victim's sexual assault and murder was admissible in other victim's trial alleging sexual assault and attempted murder as same transaction contextual evidence).  Thus, the jury would have heard the same evidence regardless of whether the offenses were tried separately in a different trial or together in one.  *See Dominguez v. State,* 62 S.W.3d 203, 208 (Tex.App.--El Paso 2000, pet. ref'd).  Accordingly, because the same evidence would be admissible regardless of whether the offenses were tried separately or jointly, we hold that any joinder / severance error did not affect a substantial right.  *See White*, 190 S.W.3d at

---

[7]Same transaction contextual evidence results when an extraneous matter is so intertwined with the State's proof of the charged crime that avoiding reference to it would make the State's case incomplete or difficult to understand.  *Rogers v. State*, 853 S.W.2d 29, 33 (Tex.Crim.App. 1993).  "It is well settled that where one offense or transaction is one continuous episode, or another offense or transaction is part of the case on trial or blended or closely interwoven therewith, proof of all facts is proper." *Moreno v. State*, 721 S.W.2d 295, 301 (Tex.Crim.App. 1986).  The purpose of admitting extraneous evidence as same transaction contextual evidence is to put the instant offense in context.  *Camacho v. State,* 864 S.W.2d 524, 532 (Tex.Crim.App. 1993).

231-32; *Tovar v. State*, 165 S.W.3d 785, 795 (Tex.App.--San Antonio 2005, no pet.); *Dominguez*, 62 S.W.3d at 208. Appellant's first issue is overruled.

**Ineffective Assistance of Counsel**

Appellant next asserts that his trial counsel was ineffective because he failed to present any mitigating evidence during the punishment trial. The State counters that the record is insufficient to conclude that Appellant's trial counsel was ineffective.

We examine ineffective assistance of counsel claims by the standard enunciated in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and adopted by Texas in *Hernandez v. State*, 726 S.W.2d 53, 56-57 (Tex.Crim.App. 1986). Appellant has the burden to show by a preponderance of evidence (1) trial counsel's performance was deficient in that it fell below the prevailing professional norms, and (2) the deficiency prejudiced the defendant; that is, but for the deficiency, there is a reasonable probability that the result of the proceeding would have been different. *See Thompson v. State,* 9 S.W.3d 808, 812 (Tex.Crim.App. 1999). Counsel's conduct is viewed with great deference; *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex.Crim.App. 2005), and any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson*, 9 S.W.3d at 812.

In the usual case in which an ineffective assistance claim is made, "the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decision-making as to overcome the presumption that counsel's conduct was reasonable and professional." *Bone v. State*, 77 S.W.3d

8

828, 833 (Tex.Crim.App. 2002). This is generally the case because a silent record provides no explanation for counsel's actions and therefore will not overcome the strong presumption of reasonable assistance. *Freeman v. State*, 125 S.W.3d 505, 506 (Tex.Crim.App. 2003). The proper procedure for raising a claim of ineffective assistance is almost always habeas corpus. *Aldrich v. State*, 104 S.W.3d 890, 896 (Tex.Crim.App. 2003).

This case demonstrates the inadequacies inherent in evaluating such claims on direct appeal. *See Patterson v. State*, 46 S.W.3d 294, 306 (Tex.App.--Fort Worth 2001, pet. ref'd). Like *Patterson*, Appellant's motion for new trial did not claim ineffective assistance of counsel, the trial court did not hold a hearing to determine whether Appellant's complaint involved actions that may or may not have been grounded in sound trial strategy. The only indication in the record why Appellant's trial counsel did not present any mitigation evidence is her closing argument in the punishment proceeding where she indicated such evidence was unavailable. On appeal, Appellant does not point to any evidence that was available or describe how such evidence would have created a reasonable probability that the result of the proceeding would have been different.

On this record, to find Appellant's counsel ineffective, we would have to engage in prohibited speculation. *See Stafford v. State*, 101 S.W.3d 611, 613-14 (Tex.App.--Houston [1st Dist.] 2003, pet. ref'd). Absent evidence of counsel's strategy, we cannot denounce counsel's actions as ineffective nor can we determine there is a reasonable probability that the outcome would have been different. For this reason, Appellant has

9

not met either prong of the *Strickland* test. Accordingly, Appellant's second issue is overruled.

## Attorney's Fees

We also note an issue not raised by Appellant regarding the assessment of attorney's fees.[8] The written judgment in Cause No. 59,233-D reflects the assessment of court costs in accordance with the attached list of costs, fees and fines. The attached Bill of Costs then reflects total costs of $28,757.91, which sum includes court-appointed attorney's fees of $10,433.06. Also contained in the clerk's record is an order directing the Institutional Division of the Texas Department of Criminal Justice to withhold from Appellant's inmate account sums sufficient to pay the $28,757.91. In order to assess attorney's fees as court costs, a trial court must determine that the defendant has financial resources that enable him to offset in part or in whole the costs of legal services provided. Tex. Code Crim. Proc. Ann. art. 26.05(g) (West 2009). Here, the clerk's record reflects the trial court found Appellant indigent and unable to afford the cost of legal representation both before trial in February of 2010, and again after trial in March 2010. Unless a material change in his financial resources occurs, once a criminal defendant has been found to be indigent, he is presumed to remain indigent for the remainder of the proceedings. Tex. Code Crim. Proc. Ann. art. 26.04(p) (West Supp. 2010). Therefore, because there is evidence of record demonstrating that

---

[8]Courts of appeals may review unassigned error in criminal cases, particularly where the record discloses error that should be addressed in the interest of justice. *Hammock v. State,* 211 S.W.3d 874, 878 (Tex.App.--Texarkana 2006, no pet.). Where, as here, the error appears on the face of the judgment and does not involve the merits of the criminal trial, but instead solely addresses the clerical correctness of the judgment, we find that the interest of justice dictated that we address the issue.

10

immediately following rendition of judgment Appellant was indigent and qualified for court-appointed counsel, we presume that his financial status has not changed.

Furthermore, the record must reflect some factual basis to support the determination that the defendant is capable of paying attorney's fees. *Barrera v. State,* 291 S.W.3d 515, 518 (Tex.App.--Amarillo 2009, no pet.); *Perez v. State,* 280 S.W.3d 886, 887 (Tex.App.--Amarillo 2009, no pet.).

We note that the record in this case does not contain a pronouncement, determination, or finding that Appellant had financial resources that enable him to pay all or any part of the fees paid his court-appointed counsel, and we are unable to find any evidence to support such a determination. Therefore, we conclude that the order to pay attorney's fees was improper. *See Mayer v. State,* 309 S.W.3d 552, 555-56 (Tex.Crim.App. 2010). No trial objection is required to challenge the sufficiency of the evidence regarding the defendant's ability to pay. *Id.* When the evidence does not support an order to pay attorney's fees, the proper remedy is to delete the order. *Id.* at 557*; see also Anderson v. State,* No. 03-09-00630-CR, 2010 Tex.App. LEXIS 5033, at *9 (Tex.App.--Austin July 1, 2010, no pet.) (mem. op., not designated for publication) (also modifying judgment to delete attorney's fees). Accordingly, in Cause No. 59,233-D, we modify both the judgment and the order to withdraw funds so as to delete any obligation to pay court-appointed attorney's fees. We further note that the judgment in Cause No. 59,234-D does not contain the same error.

11

## Conclusion

Having modified the trial court's judgment in Cause No. 59,233-D to delete the order obligating Appellant to pay $10,433.06 in attorney's fees, that judgment is affirmed as modified.   The trial court's judgment in Cause No. 59,234-D is affirmed.


Patrick A. Pirtle
Justice


Do not publish.